CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, MORRIS, and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant ANDERSON A. ANTEPARA**
**United States Army, Appellant**

ARMY 20220562

Headquarters, 1st Cavalry Division
Tiffany D. Pond, Military Judge
Lieutenant Colonel Shari F. Shugart, Staff Judge Advocate

For Appellant: Captain Matthew S. Fields, JA; Robert Feldmeier, Esquire (on brief); Robert Feldmeier, Esquire (on reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Lieutenant Colonel Kalin P. Schlueter, JA; Major Austin L. Fenwick, JA (on brief).

15 January 2026[1]

------------------------------------------------
MEMORANDUM OPINION ON REMAND
------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MORRIS, Senior Judge:

Appellant's case returns to our court following remand from the Court of Appeals for the Armed Forces [CAAF]. In our first decision, we rejected appellant's factual sufficiency claim and affirmed his conviction for sexual assault without consent in a short-form per curiam opinion. *United States v. Antepara*, ARMY 20220562, 2024 CCA LEXIS 350 (Army Ct. Crim. App. 15 Aug. 2024) ("*Antepara I*"). The CAAF ordered us to revisit our sufficiency analysis consistent with its subsequent opinion in *United States v. Mendoza*. 85 M.J. 213 (C.A.A.F. 2024). We follow our superior court's instructions here and again find that the government's

------------------------------------------------
[1] Corrected

evidence was sufficient to convict appellant for the charged offense, sexual assault without consent. We therefore affirm.[2]

## BACKGROUND AND THE CAAF'S REMAND ORDER

Appellant engaged in rough sexual intercourse with the victim, ▮ as she slept in her bed, next to appellant's five-year-old daughter. The incident occurred while appellant was a guest in ▮ home and as appellant's wife slept in a nearby room. ▮ awoke to the sexual contact and attempted to pull her pants up. Appellant and ▮ had no romantic or sexual history.

Prior to this incident, appellant's family and ▮ family were close. ▮ and her husband met appellant and his wife at a previous duty station. They became friends and spent most weekends together, often drinking. Eventually, appellant and his wife named ▮ and her husband godparents of their daughter. Upon appellant's reassignment to Fort Hood, ▮ husband requested the same duty station to maintain the close friendship.

Appellant's family came to stay with ▮ during a severe ice storm. Winter Storm Uri slammed Texas with historically low temperatures, heavy snow, and freezing rain. The storm disabled power in appellant's home and after two days without heat, appellant's wife reached out to ▮ about their family's plight. Fortunately, ▮ home maintained power, and she offered appellant's family refuge from the storm.

After arriving at ▮ home, appellant and his wife watched movies and drank alcohol. ▮ joined them after making appellant's daughter comfortable in the master bedroom with snacks and a movie. Throughout the evening, the three adults drank a bottle of red wine, mixed drinks, and took shots of liquor. ▮ consumed more alcohol than appellant or his wife and eventually lost memory while in her kitchen. She eventually retired to her bedroom alone while appellant and his wife stayed up.

▮ awoke and regained memory as appellant moved her around in her bed. She felt cold and could tell as she touched her legs that her pants had been pulled down. She struggled to pull her pants up but again blacked out. She regained memory as appellant inserted his fingers into her vagina but again blacked out. Next, she remembered appellant pulling her hair with enough force to lift her head off the bed. When appellant let go of her hair, her head fell freely onto the bed and

---

[2] Contrary to his plea, an enlisted panel found appellant guilty of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [UCMJ]. Appellant was sentenced to a dishonorable discharge, thirty-two months of confinement, and reduction to the grade of E-1.

she blacked out again. She next felt appellant forcing his penis into her vagina before again losing memory. In her next memory, she described feeling her body position change in the bed so that she lay on her stomach with her lower half hanging off the bed. She felt appellant behind her, penetrating her with his penis. Next, she recalled seeing appellant's legs and clothing. Describing her mental and physical state at trial, ▌▌ said, "I had no control of anything, like, I was unconscious. I just remember briefly waking up and feeling these things and then, like, blacking out again. Like, I couldn't speak, I couldn't move, I couldn't do anything."

The next morning, ▌▌ woke up with her pants on and initially thought her memories were a bad dream. However, when she went to the bathroom and urinated, she felt a sharp pain consistent with rough sex. As she recalled her memories from the previous night, she grew aware of the gravity of what had occurred. After some brief hesitation, she told appellant's wife what she remembered. Appellant's wife related that at some point during the night she observed her husband leaving ▌▌ bedroom. Appellant's wife then confronted appellant, leading appellant to apologize and say he was "drunk" and did not remember what happened.

Shortly thereafter, ▌▌ sought a medical examination from a sexual assault nurse examiner. The examiner observed an abrasion on ▌▌ vulva large enough to be seen by the naked eye. The examiner also swapped ▌▌vagina for further testing. These tests detected the presence of appellant's DNA in ▌▌ vagina.

At the conclusion of the investigation, the government charged appellant with two specifications of sexual assault "without the consent of [▌▌]", one for penetration with his penis, the other for penetration with his finger. Appellant contested the charges at a general court-martial.

Although government counsel presented their case primarily as one of non-consent, they also included evidence that ▌▌was intoxicated and "blacked out" multiple times during the assault. However, they did not elicit any testimony about ▌▌ level of intoxication, ability to balance, speak coherently or reason. Nor did they request the assistance of an alcohol-related expert witness or consultant. They also did not overemphasize the fact that ▌▌ was asleep when the assault began.

Defense counsel, on the other hand, argued the government's case was based primarily on a theory of incapacity and presented evidence from their expert witness on the medical community's understanding of a blackout. As described by Dr. ▌▌ a blackout is a period where people "can interact with their environment and other people . . . they're just not forming those memories of what occurred." He continued, "if you get to that level of impairment with blackout, you are not encoding or saving those memories." However, on the way to blackout, "you may get shoddy memories, maybe malformed memories or incomplete memories, snippets

of things that are remembered." Under cross-examination, Dr. ■ confirmed that there are distinctions between the way lay people and medical personnel use the term "blackout" and that it is important to capture what a lay person means when they use the term.

At the conclusion of the defense case, the trial counsel requested instructions on "competence" and "incompetence" to be presented to the panel. The military judge denied the request and additionally struck from the consent instruction definitions of "sleeping, unconscious, or incompetent person . . . ." The military judge further explained that she did so "based on the way that the government has charged it as *without consent*." (emphasis added).

In closing argument, while discussing the "without consent" element, trial counsel also addressed the fact that the assault began while the victim was asleep and intoxicated. Without objection from defense counsel, he also included argument about the topics the military judge had excluded from her instructions. In his closing argument, defense counsel countered trial counsel's arguments with his theory that not only was the victim's level of intoxication unclear, but that she consented to the sex act and later regretted it. After arguments from both counsel, the military judge provided the standard instruction to the panel that arguments from counsel were not evidence and that her instructions should be followed, if there is a dispute between counsels' statements and her instructions. Following deliberations, the panel convicted appellant of Specification 1 for the penile assault but acquitted him of Specification 2 for the digital penetration.

Our prior decision in this case, *Antepara I*, summarily affirmed the panel's findings and the military judge's sentence. Thereafter, we denied appellant's motion for reconsideration and suggestion for *en banc* review. Upon petition from appellant, the CAAF set aside *Antepara I* and ordered remand for a new factual and legal sufficiency review in light of their holding in *Mendoza*. *United States v. Antepara*, No. 25-0079/AR, 2025 CAAF LEXIS 197 (C.A.A.F. 14 Mar. 2025)(order). *See generally* 85 M.J. 213.

## LAW AND DISCUSSION

Subsequent to our decision in *Antepara I*, the CAAF distinguished sexual assault "without consent", (Subsection (b)(2)(A)), from sexual assault "incapable of consent" (Subsection (b)(3)(A))[3]. *Mendoza*, 85 M.J. at 220; UCMJ art. 120(b)(2)(A), 10 U.S.C. § 920 (2018). The CAAF has held that these two statutes

---

[3] "Subsection (b)(3)(A) criminalizes the performance of a sexual act upon a victim who is incapable of consenting to the sexual act due to impairment by any drug, intoxicant, or other similar substance when the victim's condition is known or reasonably should be known by the accused." *Mendoza* at 220.

create "separate theories of criminal liability," and that charging one and proving the other "raises significant due process concerns." *Id..*

Alongside this potential due process issue, the *Mendoza* court provided the following guidance on how to properly consider intoxication evidence in the "without consent" sufficiency context:

> In our view, the ACCA's opinion presents an open question whether it improperly considered the evidence of JW's intoxication as proof of JW's inability to consent and therefore proof of the absence of consent. To be clear, our holding—that subsection (b)(2)(A) and subsection (b)(3)(A) create separate theories of liability—*does not bar the trier of fact from considering evidence of the victim's intoxication when determining whether the victim consented.* *See* Article 120(g)(7)(C), UCMJ ("All the surrounding circumstances are to be considered in determining whether a person gave consent."). Nothing in the article bars the Government from offering evidence of an alleged victim's intoxication to prove the absence of consent. Conversely, nothing bars the defense from offering the same evidence to sow reasonable doubt. But what the Government cannot do is prove the absence of consent under Article 120(b)(2)(A), UCMJ, by merely establishing that the victim was too intoxicated to consent.

*Id.* at 222 (emphasis added).

We review concerns of legal sufficiency de novo. *United States v. Robinson*, 77 M.J. 294, 297 (C.A.A.F. 2018) (citation omitted). "'The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 297-98 (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). Because we must draw "every reasonable inference from the evidence of record in favor of the prosecution[,]" the standard for legal sufficiency "involves a very low threshold to sustain a conviction." *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (quoting *Robinson*, 77 M.J. at 298; *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

Concerning factual sufficiency, we apply the standard, as amended by the National Defense Authorization Act for Fiscal Year 2021. Publ. L. No. 116-283, § 542(b), 134 Stat. 3611-12 (applying when every finding of guilty is for an offense

which occurred on or after 1 January 2021).[4] Appellant alleges a specific deficiency in proof, articulating a *Mendoza* claim. *See United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024); 85 M.J. at 222. We may only set aside a finding as factually insufficient if, after giving "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence," we are "clearly convinced that the finding of guilty was against the weight of the evidence . . . ." UCMJ art. 66(d)(1)(B). While the statute affords this court discretion in determining what level of deference is appropriate, in *Harvey*, CAAF held that "a CCA might determine that the appropriate deference required for a court-martial's assessment of the testimony of a fact witness, whose credibility was at issue, is high because the CCA judges could not see the witness testify." 85 M.J. at 131.

Despite civilian defense counsel at trial and appellant's assertions to the contrary,[5] appellant was not convicted under a theory of incapacity. Though the Government counsel emphasized ████ level of intoxication in their closing statement, they did not introduce expert testimony on intoxication, nor did they present any evidence on whether or not ██ appeared too intoxicated to consent. Further, the military judge denied the government's request to present incapacitation instructions to the factfinder.

"Nothing in the article bars the Government from offering evidence of an alleged victim's intoxication to prove the absence of consent." *United States v. Casillas*, __ M.J. __, 2025 CAAF LEXIS 692, at *12 (C.A.A.F. 20 Aug. 2025) (alteration and internal quotations omitted) (citing *Mendoza*, 85 M.J. at 222). As the CAAF noted, a victim's intoxication can still be relevant under a "without consent" theory of liability, so long as evidence of intoxication is not the *only* evidence of non-consent. *Mendoza*, 85 M.J. at 222.

---

[4] B) Factual Sufficiency Review.—(i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof. (ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—
(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and (II) appropriate deference to findings of fact entered into the record by the military judge. (iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

[5] *See* Appellant's Motion for Reconsideration and Suggestion for Reconsideration *en banc*.

While the evidence of the victim's intoxication is undisputed in this case, as defense counsel argued in his closing, the evidence of intoxication did not preclude ████ capacity to consent. The victim testified to her memory of every charged act of penetration. Much like the victim in *Casillas*, ██ awoke to the assault in-progress and remembers trying to pull her pants up—evidence she was capable of consenting and did not consent before being penetrated. 2025 CAAF LEXIS 692, at *14 ("Critically, [the victim]'s testimony establishe[d] that she was awake and aware of what was happening for at least a short time when [a]ppellant was penetrating her, as alleged in the specification."). Two things can be true: ██ both had capacity and lacked capacity at different times of the assault. However, the military judge only instructed the panel on sexual assault "without consent" and did not include any portions of the incapacity instruction. In appellant's case, evidence that ██ was capable of consent and did not consent included that she struggled to pull her pants back up after appellant removed them and that she did not reciprocate appellant's sexual contact.

Considering appellant's conviction hung primarily on the testimony of ██, we give high deference to the panel who occupied a far better vantage to assess ████ credibility. The panel witnessed the victim testify about the following "surrounding circumstances" concerning appellant's stay at ████ home, which served to establish ██ would not and did not consent to appellant's unprompted sexual acts. The circumstantial evidence of ████ non-consent includes: (1) a lack of any prior sexual or romantic relationship with appellant; (2) the presence of a quasi-familial relationship with appellant; (3) ████ decision to give appellant and his wife separate sleeping quarters; (4) ████ retreat to her bedroom alone; (5) the presence of appellant's daughter in the bed with ██ when appellant initiated sexual intercourse; (6) the presence of appellant's wife in the next room; (7) ████ outcry the following morning first to appellant's wife and then to the SANE nurse at the hospital; and (8) appellant's apology and equivocation upon confrontation. There is overwhelming circumstantial evidence that ██ did not consent to the charged sexual acts. Giving appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence, we are clearly convinced that the weight of the evidence supported the finding of guilty beyond a reasonable doubt.

Finally, the panel, in its fact-finding, was never instructed on incapacity as a possible sexual assault theory. Despite the government's specific requests to include definitions for competence, incompetence or incapacity in her instructions to the panel, the military judge declined to do so, explaining that her decision was "based on the way that the government ha[d] charged it as without consent." "Members are presumed to follow a military judges' instructions to consider evidence for a proper purpose . . . ." *United States v. Collier*, 67 M.J. 347, 355 (C.A.A.F. 2009)(citation omitted). In following the military judge's instructions, the panel could only have found the victim did not consent, not that she could not consent.

In this case, the panel heard ■ testify to struggling against appellant to pull her pants back on, and that despite ‎ intoxication, she recalled all elements of the offense to include penetration by appellant's penis without her consent. While the victim testified to experiencing "blackouts" during this time, her intoxication level, at times, was below "blackout," because she was able to lay down some memories during the assault. As Dr. ■ described, a person suffering a "blackout" as the medical community describes it, would not lay down any memories at all.

Although trial counsel requested an incapacitation instruction, the military judge denied the instruction and properly advised the panel on consent. Additionally, the military judge reminded the panel before deliberation to make their determination on the evidence presented and not the argument of counsel. Accordingly, in addition to finding that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we are also convinced that appellant's finding of guilty was not against the weight of the evidence. Based on our review of the record, we conclude that appellant's conviction is legally and factually sufficient under both *Mendoza* and *Casillas*.

## CONCLUSION

On further review and consideration of the entire record, the finding of guilty to Specification 1 of The Charge and the sentence are AFFIRMED.

Senior Judge FLEMING and Judge JUETTEN concur.

FOR THE COURT:



JAMES W.
Clerk of Court